## AMERICAN MERCHANT MARINE INS. CO. OF NEW YORK v. LIBERTY SAND & GRAVEL CO., Inc.*

(Circuit Court of Appeals, Third Circuit. June 27, 1922.)

No. 2851.

1. **Insurance ⟨⟩646(6)—Insurer held to have burden of proof on Issue of Injury from unseaworthiness.**

Where insured, in suit on marine policy, declared on insurer's liability for a peril insured against, a peril of navigation, and the answer denied the injury was caused by peril insured against, and averred that it resulted from unseaworthiness, a peril claimed excepted from the policy, insurer had the burden of proof on the issue of unseaworthiness.

2. **Admiralty ⟨⟩118—Findings not disturbed on appeal, unless clearly against the evidence.**

Though the court on appeal in admiralty must consider the testimony de novo, it observes the rule that findings of fact by a trial judge who saw and heard the witnesses will have great weight with an appellate court, and will not be disturbed, unless clearly against the evidence.

3. **Admiralty ⟨⟩118—Finding that loss was occasioned by peril of sea not disturbed.**

In view of conflicting testimony in suit on marine policy; held, that it could not be said the trial court erred in finding that loss was occasioned by peril of navigation, and not by unseaworthiness, depending on whether hole in dredge was at a sound or rotten place in the plank, and occasioned by towage through ice.

4. **Insurance ⟨⟩470—Act of insurer held a constructive acceptance of abandonment of vessel.**

Though the marine policy declared that insured should not have right to abandon the vessel, thus abrogating right to do so and make claim for total loss on proof that cost of restoring vessel would exceed half her value, and though on tender by insured of abandonment insurer refused acceptance, yet, where insurer thereafter raised the craft and put her on dry dock, and a formal survey followed, in which situation it had the right to repair her and was under duty to return her, and then, without making any repairs, or otherwise meeting its liability, and without notice to insured, bored holes in her and plugged them, and thereafter floated her to the place from which she had been raised, and there removed the plugs and sunk her, such action amounted to a constructive acceptance of abandonment.

5. **Insurance ⟨⟩470—Clauses against abandonment In marine policy no protection against insurer's unauthorized acts.**

Clauses against abandonment in marine insurance policies relate only to authorized acts of insurer, and as to its unauthorized acts do not protect it against liability for the policy's full amount.

6. **Insurance ⟨⟩489—Under suing and laboring clause of marine policy, Insurer held not liable to contribute to expenses.**

Whether the duty of insured to sue and labor for the protection of the subject insured was already imposed by rule of law, or was newly imposed by the word "necessary" in clause of marine policy providing that in case of loss or misfortune it should be "lawful and necessary" for insured to sue, labor and travel in and about the defense, safeguard and recovery of the vessel, insurer is not liable to contribute to the expenses incurred under the clause; there being therein no express undertaking to do so, and none being impliable, and there being no evidence of usage to the contrary.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 258 U. S. ——, 43 Sup. Ct. 96, 67 L. Ed. ——.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit by the Liberty Sand & Gravel Company, Inc., against the American Merchant Marine Insurance Company of New York. Decree for libelant, and respondent appeals. Modified.

Bigham, Englar & Jones, of New York City, and McDermott, Enright & Carpenter, of Jersey City, N. J. (D. Roger Englar, of New York City, and James D. Carpenter, Jr., of Jersey City, N. J., of counsel), for appellant.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J., and Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Robert S. Erskine, of New York City, Thomas G. Haight, of Jersey City, N. J., and Harry D. Thirkield, of New York City, of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This suit was brought on a policy of marine insurance. The libellant was awarded $24,100 damages for the loss of the property insured and $1,161.12 for the respondent's share of the expense of safeguarding the property. The respondent appealed.

The central facts of the case are these: The respondent issued to the libellant a policy of marine insurance, insuring a dredge against adventures and perils of the waters of New York Harbor and Long Island Sound.

The hull of the dredge was an old wooden car float, shortened and reconstructed. She was equipped with a boiler, engines, an A frame, shell buckets and tackle, all of an agreed value of $40,000. In August, 1919, the dredge was put on dry dock. After repairs had been made, it is said, her outside planking was in good condition and otherwise she was tight and staunch. In October, 1919, she began dredging Port Jefferson Harbor and continued without interruption until January 15, 1920, when she was obliged by cold weather and ice to suspend operations. On Saturday, January 17, the ice increasing, it was decided to move the dredge to a dock nearby. On that day a tug broke a path through the ice, reached the dredge and towed her to the dock. It was testified that the ice was eight inches thick, the distance of the tow was less than one nautical mile, and the time consumed was three hours. During the towage, heavy ice continuously struck and swept around the bow. Early in the morning of Monday, January 19, the captain went below and found only the quantity of seepage which is expected in wooden craft. Starting the pump, he had his breakfast. Immediately after breakfast, he found the dredge taking water rapidly and on examination found it was coming in through a hole in the bow. Efforts to stop the leak being unavailing, the dredge speedily sank. Notice of the disaster was promptly communicated to the underwriter.

Investigation disclosed that the dredge had settled on an uneven bottom with her bow higher than her stern and her stern projecting over an under-water ledge. Thereby she became hogged or sustained a "broken back." At high tide her hull was entirely submerged.

Shortly after the disaster, the libellant employed a wrecking concern to examine the dredge and report on the situation. The wreckers estimated that the dredge could be raised for a named sum and the libellant ordered them to proceed; but before they could get under way, continued cold weather and increase of ice made wrecking operations impossible. In the latter part of March, as soon as the ice started to break up, the dredge was examined by surveyors for the underwriter. Further examination was also made by the wrecking concern with the result that it was thought the dredge had been so seriously damaged that the cost of raising and repairing her would exceed her value. The libellant then notified the respondent of the result of the survey, formally tendered abandonment of the wreck and made claim for a total loss.

In November, 1920, about ten months after the dredge sank, the respondent had her raised and put on dry dock. While there she was formally surveyed by surveyors agreed upon. A hole eight inches by two inches was found in the bow—the cause of her sinking. Her damage, measured by an estimated cost of repairs, was considerable. Whether the loss was total is one of the questions in issue. This litigation followed.

The testimony is in irreconcilable conflict. From this conflict of testimony the controversy moved to a question of burden of proof and on this question the case is mainly brought here for review.

[1] Turning to the pleadings, it appears that the libellant declared on the respondent's liability for a peril insured against in the policy—a peril of navigation. The respondent by its answer denied that the injury to the dredge was caused by a peril insured against and averred that the injury resulted from her unseaworthiness, a peril which, it claims, was excepted from the policy. While a question has arisen whether the policy contains an express warranty of seaworthiness, it contains, nevertheless, a clause—sufficient to support this defense—expressly excepting the insurer from liability for damages arising from unseaworthiness. Thus each party raised an issue, the libellant on a peril included within the policy, and the respondent on a peril excluded from the policy. And of the same view evidently was the learned trial judge, for he rendered a decision on each issue; on the first for the libellant and on the second against the respondent, expressly stating with respect to the latter that the respondent had not sustained the burden of proving the defense of unseaworthiness. Just here is the error assigned by the respondent on the issue of burden of proof.

As the case was pleaded and tried, clearly there were the two issues we have indicated. The burden was on the libellant to prove affirmatively that the loss of the dredge was caused by some peril within the policy of insurance. Swan v. Union Insurance Co., 3 Wheat. 168, 4 L. Ed. 361; Richelieu Navigation Co. v. Boston Insurance Co., 136 U. S. 408, 10 Sup. Ct. 934, 34 L. Ed. 398; Bullard v. Roger Williams Insurance Co., Fed. Cas. No. 2,122. Failing in this, obviously the libellant could not prevail.

Having pleaded unseaworthiness of the dredge, either under an express warranty or its equivalent, 14 R. C. L. 1213, the trial judge

placed the burden of proving her unseaworthiness upon the respondent, the party setting it up as a defense. For authority he relied upon Earmoor v. California Insurance Co. (D. C.) 40 Fed. 847; New York & P. R. S. S. Co. v. Ætna Insurance Co., 204 Fed. 255, 122 C. C. A. 523; Fireman's Fund Insurance Co. v. Globe Navigation Co., 236 Fed. 618, 149 C. C. A. 614; American Merchant Marine Insurance Co. v. Margaret M. Ford Corporation (C. C. A.) 269 Fed. 768; Thames v. Pacific Co., 223 Fed. 561, 139 C. C. A. 101. The respondent says, however, that in this he was wrong, and maintains that there rests upon the libellant the burden of affirmatively proving seaworthiness of the craft in order to show that the loss was not occasioned by one of the perils excepted, citing Richelieu & O. Navigation Co. v. Boston Insurance Co., 136 U. S. 408, 10 Sup. Ct. 934, 34 L. Ed. 398, as the only authority which it deems necessary to sustain its position. The respondent, we think, relies on an expression in the opinion of that case rather than on the case itself. This expression, quoted with the respondent's italics, is as follows:

"It was necessary *to the plaintiff's case* that it should appear from the whole proof that the loss was not occasioned by the want of ordinary care by the master, or on account of unseaworthiness, *and was not within exceptions contained in the policy, against which plaintiff was not insured."*

No criticism can be made of this statement of law when considered with reference to the facts of the case; nor can the statement be construed as a decision by the Supreme Court varying the rule followed by District Courts and Circuit Courts of Appeals in the cases cited. In this case it appears that the insured vessel had stranded in Canadian waters while running, contrary to the laws of Canada, at full speed in a dense fog. The rules of the Canadian statute correspond with those prescribed by Congress (Revised Statutes, § 4233 [Comp. St. § 7942]; Act March 3, 1885, 23 Stat. 438) and recognized as international rules. Therefore, the court applied the law of The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148, that,

"Where a vessel has committed a positive breach of statute she must show that not only probably her fault did not contribute to the disaster, but that it certainly did not; and that it could not have done so."

At the trial, however, it developed on the testimony of the master and crew that the loss was attributable to a defective compass, which, if true, brought the loss within the excepted peril of unseaworthiness. The issue of this excepted peril was to the forefront of the controversy, but whether pleaded as a defense does not appear. At all events, the issue was raised somehow and actively controverted, and the Supreme Court said what was obviously true, that it was "necessary to the plaintiff's case," that is, for the plaintiff to prevail, "that it should appear from the *whole proof* that the loss was not occasioned * * * on account of unseaworthiness, and was not within exceptions contained in the policy."

It is pertinent to note, however, that this expression was quoted from the opinion of the same court in Union Insurance Co. v. Smith, 124 U. S. 405, 428, 8 Sup. Ct. 534, 31 L. Ed. 497, where the same defense of want of ordinary care by the master and of unseaworthiness, perils

excepted in the policy, was set up in the answer, and where also the court sustained an instruction in the charge of the trial court that the defense so made—

"must be shown by a fair preponderance of the proof *on behalf of the defendant*, for the reason that the defendant sets it up in special defense in the form of a special answer *and in that respect takes upon itself the establishment of the affirmative of that proposition.*"

This being the precise situation of the respondent in the case at bar, we find that the trial court did not err in placing upon it the burden of sustaining the defense it had pleaded.

[2] Coming to the testimony, we make the observation that, although in an appeal in admiralty we are required to consider the testimony de novo, we are called upon to observe the rule that findings of fact by a trial judge who saw and heard the witnesses will have great weight with an appellate court and will not be disturbed unless they are clearly against the evidence. National Dredging & Lighterage Co. v. Turney Transportation Co. (C. C. A.) 281 Fed. 315.

[3] The testimony as to the condition of the dredge at the time she sank, and ten months later when put on dry dock, ranges over the whole craft and is to the effect, on the one hand, that she was tight and staunch, and, on the other hand, that she was rotten through and through. In the final analysis, however, the issue gets down to a hole in the third plank below the guard in the bow, through which everyone agrees the water came which sank the dredge. If the hole was in a rotten place in a plank elsewhere sound or rotten, the respondent has sustained the burden of proving unseaworthiness and has shown that the loss was due to one of the perils excepted. If the hole was in a sound place in a plank elsewhere rotten or sound, then the libellant has sustained the burden of proving that the dredge sank by reason of a peril within the policy. On the issue narrowed to the condition of the hole, there is evidence by some witnesses that the hole was rotten on its edges and there is evidence by other witnesses, equal in number and strength, that the hole did not have rotten edges but showed a clear break caused by contact with a hard substance. As the bow of the dredge in which the break or hole was found had been subjected to contact with a mass of heavy ice in a towage for three hours, and as the evidence shows that a break of this kind could have been made by ice impact, we are unable to say that the learned trial judge, who saw and heard the witnesses, committed error in finding that the hole was of the broken character described by the libellants' witnesses and was occasioned by towage through ice as one of the perils of the waters navigated. Or, stated differently, we are unable to say that the learned trial judge erred in finding that the libellant had sustained the burden of proving that the loss was occasioned by a peril included in the policy and that the respondent had not sustained the burden of proving that the loss was occasioned by a peril excluded from the policy.

[4, 5] The next question is one of abandonment. The policy provides that, "The insured shall not have a right to abandon the vessel," thus abrogating a right which otherwise it would have had to abandon

the vessel and, under the American rule, make claim for a total loss on proof that the cost of restoring the dredge would exceed 50 per cent. of her value. The libellant, nevertheless, tendered abandonment of the wreck; the respondent refused acceptance. Had the matter stopped here, there would be no question. A question, however, arose on what happened afterward.

The respondent, ten months after the wreck, raised the dredge and put her on dry dock. A formal survey followed. In this situation the respondent had the right to repair her and was charged with the duty to return her. Without making any repairs or otherwise meeting its liability, whatever it may have been, and without notice to the libellant the respondent had its employees bore holes in the timbers of the dredge and had them plugged. It then caused her to be taken out of dry dock, floated to the place from which she had been raised, the plugs removed, and the dredge sunk. The learned trial judge held that this action on the part of the respondent amounted to a constructive acceptance of abandonment. We think he was right. Certainly, under Copelin v. Insurance Co., 9 Wall. (76 U. S.) 461, 19 L. Ed. 739, where the insurer was held to a constructive acceptance of abandonment because of unreasonable delay in returning the vessel, the insurer here should be held to a like acceptance by returning the dredge not to the owners but to the bottom of the harbor. Clauses against abandonment in policies of marine insurance relate only to authorized acts of the insurer. As to unauthorized acts such clauses do not protect the insurer against liability for the full amount of the policy. Copelin v. Insurance Co., supra.

[5] The remaining question is whether, under the terms of the suing and laboring clause of the policy in suit, the court erred in requiring the respondent to contribute to the expense incurred by the libellant in caring for and preserving the wreck. The facts on this point cover disbursements on the part of the libellant running from January 23 to November 15, 1920, amounting to $1,895.71, and including some items of doubtful propriety. On a reference, a master held the respondent liable in the sum of $1,161.12, with interest, as its proportionate share of the expense incurred. His report was affirmed.

The liability of the respondent to pay a part of the expense incurred by the libellant in an attempt to prevent impending loss of the property insured rests solely on the suing and laboring clause of the policy and depends upon the interpretation of that clause.

Clauses of this character are quite ancient and have been the subject of much judicial interpretation. Such interpretation has involved generally—indeed, almost uniformly—questions as to what expenditures by the insured within their terms, imposing contribution by the insurer. In a research covering every case on suing and laboring clauses cited in all available text books, we have found no case which decides, or even approaches, the question which is involved in the interpretation of the clause in the instant case. Therefore it becomes necessary to a proper understanding of the question to review briefly the leading cases in which such clauses have been construed.

The original purpose of the suing and laboring clause in a policy of

marine insurance was to permit the insured to take every measure in preserving his vessel without waiving his right later to tender abandonment and claim a total loss. As there enured to the insurer a corresponding benefit from the labor bestowed and money expended, it came about that the insurer, in order to stimulate the insured, assumed liability for a proportion of any reasonable expense incurred in preserving the subject insured from the operation of the perils insured against. Zenos v. Fox, L. R. 3 C. P. 630, 4 C. P. 665; Cory v. Boyleston Fire & Marine Ins. Co., 107 Mass. 140, 149, 9 Am. Rep. 14; 1 Arnould on Marine Insurance, § 22.

The consideration for the underwriters' promise to contribute to the expense of preserving the insured property is the diminution of the loss which otherwise would fall upon them. A contract of this kind in a policy—ancillary to the main contract of insurance—is quite old. Indeed, it is so old that its origin is obscured by antiquity. It is known, however, that it had been embodied in various forms of suing and laboring clauses in common use in different ports sometime before 1783, when Emerigon published his work on Insurance. 2 Emerigon, by Boulay-Taty, 239. In this work we find the form used in the London policy, later adopted, without substantial change, in English and American insurance. For form in Lloyds' policy see 1 Arnould on Marine Insurance, § 22; for form in American policy see Vance on Insurance, 562. The form of the clause in the London policy is relevant to the case at bar, first, because of its terms, and second, because of the interpretation which the courts have given its terms. It is in these words:

"In case of any loss or misfortune, it shall be lawful (for the insured) to sue, labor, and travel for, in and about the defense, safeguard, and recovery of the subject-matter * * * without prejudice to this insurance, the charges whereof the said company will bear * * * in proportion to the sum hereby insured."

Discussing the scope of this clause, the court in Kidston v. Empire Marine Insurance Company, L. R. 1 C. P. 535, 542, said:

"The meaning is obvious, that, if an occasion should occur in which by reason of a peril insured against unusual labour and expense are rendered necessary to prevent a loss for which the underwriters would be answerable, and such labour and expense is incurred accordingly, the underwriters will contribute, not as part of the sum insured in case of loss or damage, because it may be that a loss or damage for which they would be liable is averted by the labour bestowed, but as a contribution on their part as persons who have avoided detriment by the result in proportion to what they would have had to pay if such detriment had come to a head for want of timely care"—affirmed in Kidston v. Empire Marine Insurance Company, L. R. 2 C. P. 357.

So also in Lohre v. Atchison, 2 Q. B. D. 501, 3 Q. B. D. 558, it was held that the clause in question is a wholly independent contract in the policy from the contract to pay a certain sum in respect of the damage done to the subject-matter of the insurance, and consequently that it applies whatever be the amount of such damage, and whether indeed any such damage occur or not. In other words, it was held to be a contribution independent of and even in addition to the whole sum insured. See also 1 Arnould on Marine Insurance, § 22; Richards on the Law of Insurance, 632.

The two cases we cite, which are the leading English cases on the subject (found also in 14 Eng. Rul. Cas. 247, 448), have, so far as our research has disclosed, been followed without variation by the American courts. Cory v. Boyleston Ins. Co., 107 Mass. 140, 9 Am. Rep. 14; Barker v. Phœnix Ins. Co., 8 Johns. (N. Y.) 307, 5 Am. Dec. 339; Jumel v. Marine Ins. Co., 7 Johns. (N. Y.) 412, 5 Am. Dec. 283; Alexandre v. Sun Mutual Ins. Co., 51 N. Y. 253; Cincinnati Mutual Ins. Co. v. May, 20 Ohio, 212; Gardere v. Columbian Ins. Co., 7 Johns. (N. Y.) 514; St. Paul F. & M. Ins. Co. v. Pacific Cold Storage Co., 157 Fed. 625, 87 C. C. A. 14, 14 L. R. A. (N. S.) 1161; Biays v. Chesapeake Ins. Co., 7 Cranch, 415, 3 L. Ed. 389; 26 Cyc. 683; 14 R. C. L. 1300.

Relying upon several of these English and American authorities, the master found that, notwithstanding a provision in the policy limiting the liability of the insurer to $24,500, the suing and laboring clause of the policy is a distinct and wholly independent contract, having reference not to charges covered by the insurance but to expense incurred in part for the benefit of the insurer. Besides awarding the libellant the full amount of the insurance, the master on his interpretation of the clause also awarded the libellant $1,161.12 as the respondent's proportion of the expense incurred in preserving the dredge, measured by the relation which the sum insured bore to the sum at risk. And of the same opinion was the learned trial judge. We should readily concur in this conclusion if the suing and laboring clause of the policy in suit were in the terms of the suing and laboring clauses in the cases relied upon by the master and court. In this connection it is important to note a matter which, doubtless, escaped their notice. It is, that in every one of the cases cited by the master and the cases in addition cited by us, in which the terms of the policy sued on are given (that is, in all but two) there is in the suing and laboring clause an express undertaking on the part of the insurer to contribute to the expense incurred for the protection of the subject of the insurance. Citing for illustration only two cases: First, in the Kidston case the clause concludes with these words: "The charges whereof the said company will bear in proportion to the sum hereby insured;" and last, in the Columbian Insurance Company case the clause ends with the words: "To the charges whereof the said insurance company will contribute according to the rate and quantity of the sum herein insured."

The quoted suing and laboring clause with a stipulation by the insurer to make contribution has been so uniformly followed in its terms that it has become known in English and American reports as the "usual" suing and laboring clause. In its use by underwriters its form has been preserved, so far as disclosed by the cases, down to the instant case where there occurs the first deviation which we have been able to find. We now quote the suing and laboring clause of the policy in suit, italicizing the words incorporated from the London policy, before quoted.

"And *in case of any loss or misfortune, it shall be lawful* and necessary to and for the insured * * * *to sue, labor, and travel for,* and to make all

reasonable exertions *in and about the defence, safeguard, and recovery of the* said vessel, or any part thereof, *without prejudice to this insurance.*"

This clause differs from the usual clause which has received the interpretation of the courts in that it provides that it shall be "necessary," as well as lawful, for the insured to sue, labor and travel for the safeguard of the subject of the insurance; and—still more important—it wholly omits the undertaking that "the charges whereof the said company will bear in proportion to the sum hereby insured." So we have in this case not a question of what expenses fall within the suing and laboring clause, but a question whether or not the particular suing and laboring clause of the policy in suit contains an undertaking on the part of the insurer amounting (as in the "usual" clause) to an independent contract on its part to make contribution to an expense incurred to preserve the property insured. So far as we have been informed and can find from the books, this is the first time this question has arisen. Indeed, the courts and writers on the law of insurance seem to have taken it for granted hitherto that the clause is always in the usual form, for they point out that the advantage to the insured in assigning expenditures to that clause "lies in the circumstance that it contains a *promise of payment* by the underwriters which is supplementary to their contract of insurance." Richards on Insurance Law, p. 632; 1 Arnould on Marine Insurance, § 22. Thus, in reaching a decision on the question before us, we are not aided by any authorities which bear even remotely on the question or by any evidence of usage prevailing under a clause of this character. Hence, in construing the clause, we are confined to its own terms. These terms show, that, though lawful, it is not optional for the insured to sue, labor and travel for the protection of the property insured, but by the new term that "it shall be * * * necessary" so to do. This first change of expression from the usual clause has received judicial construction. Courts have held that the insertion of the word "necessary" does not essentially alter the operation of the clause. It imposes no additional duty on the master. He was already bound to labor diligently for the recovery of the property and to alleviate the burden of the insurer. Gardere v. Columbian Insurance Co., 7 Johns. (N. Y.) 514; Cincinnati Mutual Ins. Co. v. May, 20 Ohio, 212; 2 Marshall, Ins. 625; 1 Arnould on Marine Insurance, § 22. Yet, whether the duty of the insured to sue and labor for the protection of the subject insured was already imposed by rule of law or was newly imposed by the terms of the clause, there is in the clause of the policy in suit no undertaking expressly assumed by the insurer to contribute to the expense thereof. As the policy of insurance is a written contract, no such undertaking can be implied. In the absence of such a promise, as well as in the lack of any evidence indicating usage to the contrary, we are forced to construe the clause by its terms and to hold that the clause is not an independent contract, or, rather, that it is not a contract at all, and, therefore, the insurer here is not liable to contribute to the expense incurred by the insured under its terms.

Being of this mind, we direct that the decree below be modified in conformity with this opinion so that the claim of the libellant for $1,-

161.12, contribution under the suing and laboring clause, be disallowed, and that, as before, the libellant be awarded damages in the sum of $24,100, with appropriate interest and costs, and that the libellant (appellee) shall pay $50 of the costs of this appeal and the respondent (appellant) shall pay the balance thereof.